**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NATHANIEL SOMMER,<br><br>        Plaintiff,<br><br>-against-<br><br>SOUTHWESTERN ENERGY COMPANY, CATHERINE A. KEHR, JOHN D. GASS, GREG D. KERLEY, JON A. MARSHALL, PATRICK M. PREVOST, ANNE TAYLOR, DENIS J. WALSH III, S.P. "CHIP" JOHNSON IV, and WILLIAM J. WAY,<br><br>        Defendants. | Case No.: 1:21-cv-<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Nathaniel Sommer ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Southwestern Energy Company ("Southwestern Energy" or the "Company") and the members of Southwestern Energy's board of directors (the "Board" or the "Individual Defendants" and together with Southwestern Energy, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, and breach of fiduciary duty of candor/disclosure in connection with the proposed transaction whereby Ikon Acquisition Company, LLC ("Ikon"), a wholly-owned subsidiary of Southwestern Energy, will merge with and into Indigo Natural Resources LLC ("Indigo"), with Indigo continuing as the surviving company and wholly-owned subsidiary of Southwestern Energy (the "Proposed Transaction").

1

2. On June 1, 2021, the parties entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Indigo unitholders will receive $400 million in cash in the aggregate and 339,270,568 shares of Southwestern Energy common stock, with an aggregate market value of approximately $1.6 billion based on the trading price on May 28, 2021 (the "Merger Consideration").

3. On July 20, 2021, in order to solicit Southwestern Energy's shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading proxy statement on Schedule 14A (the "Proxy").

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Southwestern Energy, and (ii) the valuation analyses performed by Southwestern Energy's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs").

5. The special meeting of Southwestern Energy shareholders to vote on the Proposed Transaction is to be held on August 27, 2021 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can make an informed decision on the Proposed Transaction and properly exercise his corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction until the material information discussed herein is disclosed to Southwestern Energy's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.

10. In addition, Article VII, Section 7.5 of Southwestern Energy's Bylaws designate the federal district court within the State of Delaware as the "sole and exclusive forum" for actions asserting claims against the Company, or any current or former direct, officer, stockholder, employee or agent of the Company governed by the internal affairs doctrine of the State of Delaware in which the Court of Chancery lacks subject matter jurisdiction.

## PARTIES

11. Plaintiff is, and at all relevant times has been, a shareholder of Southwestern

Energy.

12.     Defendant Southwestern Energy is a Delaware corporation with its principal executive offices located at 10000 Energy Drive, Spring, Texas 77389.  Southwestern Energy's common stock trades on the New York Stock Exchange under the ticker symbol "SWN".

13.     Individual Defendant Catherine A. Kehr is, and has been at all relevant times, a director and Chairman of the Board of Southwestern Energy.

14.     Individual Defendant John D. Gass is, and has been at all relevant times, a director of Southwestern Energy.

15.     Individual Defendant Greg D. Kerley is, and has been at all relevant times, a director of Southwestern Energy.

16.     Individual Defendant Jon A. Marshall is, and has been at all relevant times, a director of Southwestern Energy.

17.     Individual Defendant Patrick M. Prevost is, and has been at all relevant times, a director of Southwestern Energy.

18.     Individual Defendant Anne Taylor is, and has been at all relevant times, a director of Southwestern Energy.

19.     Individual Defendant Denis J. Walsh III is, and has been at all relevant times, a director of Southwestern Energy.

20.     Individual Defendant S.P. "Chip" Johnson IV is, and has been at all relevant times, a director of Southwestern Energy.

21.     Individual Defendant William J. Way is, and has been at all relevant times, a director, President and Chief Executive Officer of Southwestern Energy.

22.     The Individual Defendants referred to in ¶¶ 12-20 are collectively referred to herein

as the "Individual Defendants" and with Southwestern Energy they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.     Background and the Proposed Merger**

23.     Southwestern Energy is among the largest producers of natural gas and natural gas liquids in the United States.  According to its website, the Company is a growing independent energy company primarily engaged in natural gas and crude oil exploration, development and production.

24.     Indigo is one of the largest natural gas producers in the Haynesville Shale and the third largest private natural gas producer in the U.S.  Indigo is an experienced operator, focused in northern Louisiana with direct access to Gulf Coast markets and associated industrial and LNG demand growth.  Indigo is headquartered in Houston, Texas.

25.     On June 2, 2021, Southwestern Energy issued a press release announcing the Proposed Transaction, which states in relevant part:

**Southwestern Energy Announces Agreement to Acquire Indigo Natural Resources**

*Two premier US natural gas basins, one leading natural gas company*

SPRING, Texas--(BUSINESS WIRE)-- Southwestern Energy Company (NYSE: SWN) (the "Company" or "Southwestern") today announced that it has entered into a definitive merger agreement with Haynesville producer Indigo Natural Resources, LLC ("Indigo") under which it will acquire Indigo for approximately $2.7 billion. The transaction is expected to close early in the fourth quarter of 2021, subject to customary closing conditions. Transaction highlights include:

• Increases projected cumulative free cash flow to approximately $1.2 billion from 2021 to 2023;
• Improves estimated 2022 free cash flow per share ~30% and cash flow per debt adjusted share ~15%;
• Accelerates expected delivery of sustainable leverage ratio below 2.0x in 2021

and progressing to 1.7x in 2022;
- Expands 2022 estimated margins by 12% resulting from low cost access to premium markets in the growing Gulf Coast LNG corridor;
- Complements existing portfolio, increases high-return dry gas inventory with over 1,000 locations added; and
- Leverages operational expertise of integrating and developing operated, large-scale natural gas assets; increases net production to over 4 Bcfe per day, consisting of approximately 85% natural gas.

"Today we are proud to announce another accretive transaction that will benefit the Company's shareholders for years to come. This acquisition enhances Southwestern's position as a leading natural gas producer and aligns with our disciplined strategy to generate free cash flow, enhance our balance sheet, optimize performance and build scale. Indigo has done a terrific job building its business, and its balance sheet strength, low cost structure and high-quality acreage position in the core of the Haynesville play accelerates the delivery of our strategic goals," said Bill Way, Southwestern Energy President and Chief Executive Officer.

Way continued, "Our footprint now extends across the two premier natural gas basins in the country and includes top-tier dry gas and liquids rich inventory. The value of this high-quality inventory is further enhanced by our diverse transportation portfolio providing access to premium markets in the Gulf Coast and within Appalachia. Southwestern Energy's unique combination of a strong balance sheet, high-quality assets and resilient vertically integrated business is positioned to deliver long-term value creation."

**SWN + Indigo Acreage Position (Graphic: Business Wire)**



(1) As of December 31, 2020. Indigo YE 2020 Proved Reserves adjusted for divestiture of Cotton Valley assets.
(2) As of June 1, 2021, adjusted for sale of Cotton Valley assets. Represents net surface acres. Total of 275,000 net effective acres, which includes 149,000 net acres in the Haynesville and 126,000 net acres in the Bossier.
(3) 2022E net production assumes maintenance capital investment in 2022.

Indigo is one of the largest private US natural gas producers, with core dry gas assets across the stacked pay Haynesville and Bossier zones in northern Louisiana. Its high-margin assets are located in close proximity to the growing demand in the Gulf Coast LNG corridor. Indigo currently produces 1.0 Bcf per day net and expects to produce approximately 1.1 Bcf per day net upon closing. As of March 31, 2021,

6

and adjusted for the recent sale of its non-core Cotton Valley assets, Indigo had $631 million of net debt and a leverage ratio of 1.1 times.

**Outlook**

Southwestern Energy expects to invest at maintenance capital levels again in 2022, with activity across all of its operating areas. On the acquired acreage, the Company expects to run a 4 rig program in 2022, placing 30 to 40 wells to sales. With a maintenance capital program, the Company projects 14 years of economic inventory at current strip prices across its assets in Appalachia and Haynesville. Preliminary 2022 estimates for certain key metrics of the newly combined enterprise are shown below. Estimates are based on $2.75 NYMEX and $58 WTI.

| Preliminary 2022 Estimates | SWN | SWN + Indigo | Increase (Decrease)[1] |
|---|---|---|---|
| EBITDA (non-GAAP) ($ in billions) | $1.3 | $2.0 | 54% |
| Net cash flow (non-GAAP_ ($ in billions) | $1.2 | $1.9 | 58% |
| Capital investment ($ in billions) | $0.9 | $1.4 | 56% |
| Free cash flow (non-GAAP) ($ in billions) | $0.24 | $0.47 | 96% |
| Net debt to EBITDA (non-GAAP) | 2.1x | 1.7x | (0.4x) |
| E&P margin ($ per Mcfe)[2] | $1.15 | $1.30 | 12% |
| Net Production (Bcfe/day) | 3.0 | 4.1 | 37% |

(1) Change represents SWN+Indigo as compared to SWN.
(2) E&P Margin defined as weighted average realized price less operating expenses, general and administrative expenses and taxes other than income.

Synergies are expected to be approximately $20 million in G&A reductions with further operational and financial cost savings anticipated. There are opportunities for additional value creation by leveraging the Company's core competencies for large scale, operated natural gas development, including its vertically integrated business, reservoir and base decline optimization, and use of innovation and data analytics. The Company's increased scale provides the opportunity for credit upgrades and cost of capital reductions, which would deliver additional accretion to financial performance.

**Transaction and Timing**

The total consideration of $2.7 billion will be comprised of $400 million in cash, approximately $1.6 billion in SWN common stock and $700 million of assumed 5.375% senior notes due 2029.

The stock consideration consists of approximately 339 million shares of Southwestern Energy common stock, calculated utilizing the 30-day volume-weighted average price as of May 28, 2021, of $4.72. No Indigo shareholder will receive more than 10% of Southwestern Energy's pro forma outstanding shares in connection with this transaction.

The transaction was unanimously approved by each of Southwestern Energy's and Indigo's board of directors. The transaction is expected to close early in the fourth quarter of 2021, subject to regulatory approvals, customary closing conditions and the approval by Southwestern Energy's shareholders.

**Advisors**

Goldman Sachs & Co. LLC served as the exclusive financial advisor to Southwestern and Skadden, Arps, Slate, Meagher & Flom LLP serve as legal advisor. Credit Suisse Securities (USA) LLC served as the exclusive financial advisor to Indigo and Kirkland & Ellis LLP served as legal advisor.

**Conference Call**

Southwestern Energy will host a conference call today, June 2, 2021, at 10:00 a.m. Central to discuss this transaction. To participate, dial US toll-free 877-883-0383, or international 412-902-6506 and enter access code 0998867. A live webcast will also be available at ir.swn.com.

**About Southwestern Energy**

Southwestern Energy Company is an independent energy company engaged in natural gas, natural gas liquids and oil exploitation, development, production and marketing.

**About Indigo Natural Resource**

Indigo Natural Resources LLC is one of the largest natural gas producers in the Haynesville Shale and the third largest private natural gas producer in the U.S. Indigo is an experienced operator, focused in northern Louisiana with direct access to Gulf Coast markets and associated industrial and LNG demand growth. Indigo is headquartered in Houston, Texas. For more information, please visit the Company's website at www.ndgo.com.

II.  **The Proxy Omits Material Information**

26.     On July 20, 2021, Defendants filed the materially incomplete and misleading Proxy with the SEC.  The Individual Defendants had a duty to carefully review the Proxy before it was

8

filed with the SEC and disseminated to Southwestern Energy's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for Southwestern Energy's shareholders to make an informed decision in connection with the Proposed Transaction.

      A.     <u>The Misleadingly Incomplete Financial Projections</u>

      27.     The Proxy omits material information regarding the financial projections for Southwestern Energy and Indigo provided by management and relied upon by Goldman Sachs in its analyses. In particular, the Proxy fails to provide the line items used to calculate the projections.

      28.     The projections served as a primary reason for the Board to approve the Proposed Transaction and for Goldman Sachs to find the Merger Consideration "fair" to Southwestern Energy. The information is plainly material to shareholders and must be disclosed.

      29.     With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the valuation information relied upon by Goldman Sachs and the Board but have failed to disclose the material information regarding the projections. These omissions render the summary of Southwestern Energy's and Indigo's value and financial picture in the Proxy misleadingly incomplete.

      B.     <u>The Misleadingly Incomplete Summary of Goldman Sachs' Valuation Analyses</u>

      30.     The Proxy describes Goldman Sachs' fairness opinion and the various valuation analyses performed in support of its opinion. Defendants concede the materiality of this information by including the fairness opinion and valuation analyses among the "positive" factors considered in recommending the Proposed Transaction. Proxy at 16, 17 and 104. However, the summary of Goldman Sachs' fairness opinions and analyses provided in the Proxy fail to include

9

key inputs and assumptions underlying the analyses. Without this information, as described below, Southwestern Energy shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Southwestern Energy's shareholders.

31. In summarizing Goldman Sachs' *Illustrative Discounted Cash Flow Analysis for Indigo*, the Proxy fails to disclose: (i) inputs and assumptions underlying Goldman Sachs' use of discount rates ranging from 7.00% to 8.50%, (ii) Indigo's weighted average cost of capital, (iii) Indigo's estimated unlevered free cash flow on a standalone basis without taking into account the Synergies from April 1, 2021 to December 31, 2025, (iv) the range of illustrative terminal values for Indigo as of December 31, 2025, (v) the inputs and assumptions underlying the range of perpetuity growth rates from 0.50% to 1.50%, and (vi) Indigo's net debt as of March 31, 2021 as utilized by Goldman Sachs to derive a range of illustrative equity values for Indigo.

32. The summary of Goldman Sach's *Selected Precedent Transactions Analysis* is also materially misleading. The Proxy fails to disclose: (i) the closing dates of each transaction, (ii) the consideration paid in each transaction, (iii) Indigo's net debt as of March 31, 2021, and (iv) the rationale for selecting acquisition transactions announced since October 2019.

33. The summary of Goldman Sachs' *Illustrative Discounted Cash Flow Analysis for SWN* is also deficient. The Proxy fails to disclose: (i) the inputs and assumptions underlying the discount rate range from 6.50% to 8.00%, (ii) Southwestern Energy's weighted average cost of capital, (iii) Southwestern Energy's estimated unlevered free cash flow on a standalone basis from April 1, 2021 to December 31, 2025, (iv) the illustrative terminal values of Southwestern Energy as of December 31, 2025, (v) the inputs and assumptions underlying the range of perpetuity growth

rates from 0.50% to 1.50%, (vi) Southwestern Energy's net debt as of March 31, 2021, and (vii) the number of fully diluted outstanding shares of common stock as of March 31, 2021.

34.     In summarizing Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis of SWN*, the Proxy fails to disclose: (i) the basis for multiplying the estimated NTM EBITDA for the Company by illustrative EV/NTM EBITDA multiples of 4.5x, 5.0x and 5.5x, (ii) the net debt of Southwestern Energy as of December 31 of each of 2021, 2022 and 2023, (iii) the number of fully diluted outstanding shares of Southwestern Energy common stock as of December 31 of each of 2021, 2022 and 2023, and (iv) the inputs and assumptions underlying the illustrative discount rate of 8.60%.

35.     These material omissions render the summary of Goldman Sachs' valuation analyses included in the Proxy misleadingly incomplete.

36.     Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding the Proposed Transaction, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
**Against All Defendants for Violations of Section 14(a) of the Exchange Act**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to

section 78l of this title." 15 U.S.C. § 78n(a)(1).

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

41. Defendants have issued the Proxy with the intention of soliciting Southwestern Energy's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, among other things: (i) financial projections for Southwestern Energy and Indigo, and (ii) Goldman Sachs' valuation analyses performed in support of their fairness opinions.

42. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated in or omitted from the Proxy, but failed to obtain and disclose such information to Southwestern Energy's shareholders, though they could have done so without extraordinary effort.

43. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. As officers or directors of the Company and signatories to the Proxy, the Individual Defendants

undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve the Proposed Transaction and solicit shareholder consent; indeed, the Proxy states that Goldman Sachs reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Goldman Sachs as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be misleadingly incomplete. Indeed, the Individual Defendants were required to review the financial analyses in connection with their receipt of the fairness opinion, question Goldman Sachs as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in: (i) their decision to omit material information from the Proxy; or (ii) their failure to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as Southwestern Energy's officers and directors.

45. Southwestern Energy is also deemed negligent as a result of the Individual Defendants' negligence in preparing and/or reviewing the Proxy.

46. The misrepresentations and omissions in the Proxy are material to Plaintiff, who

will be deprived of his right to make an informed decision on the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the special meeting of Southwestern Energy's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Southwestern Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Southwestern Energy, and participation in and/or awareness of Southwestern Energy's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Southwestern Energy, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants, as a signatory to the Proxy, was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Southwestern Energy, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange

Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Board to approve the Proposed Transaction.

51. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III
**Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure**

55. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56. By virtue of their role as directors or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within

their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

57. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

58. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

59. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Transaction, until Defendants disclose the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 9, 2021

                                                                **COOCH AND TAYLOR, P.A.**

                                                   */s/ Blake A. Bennett*
                                                  Blake A. Bennett (#5133)
                                                  The Nemours Building
                                                  1007 N. Orange St., Suite 1120
                                                  Wilmington, DE 19801
                                                  Tel: (302) 984-3800

                                                  *Attorneys for Plaintiff*

**OF COUNSEL:**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*