IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NATHANIEL SOMMER

    *Plaintiff,*

v.

SOUTHWESTERN ENERGY
COMPANY, et al.

    *Defendants.*

No. 1:21-cv-1153-SB

---

Blake A. Bennett, COOCH AND TAYLOR, Wilmington, Delaware.

    *Counsel for Plaintiff.*

Edward Bennett Micheletti, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware.

    *Counsel for Defendants.*

**MEMORANDUM OPINION**

July 12, 2022

BIBAS, *Circuit Judge*, sitting by designation.

Litigants typically pay their own attorneys' fees. But there are exceptions. For instance, when a plaintiff wins some benefit for a broader class of people, he may charge his legal bills to his opponent.

Nathaniel Sommer claims that this case fits that exception. He says his lawsuit prompted Southwestern Energy to disclose additional information about a proposed merger, benefiting shareholders who could use that information. Maybe. But because Sommer would not have won, he cannot recover attorneys' fees.

## I. BACKGROUND

Southwestern Energy, a natural-gas producer, planned to buy another gas company, Indigo Natural Resources. Compl., D.I. 1 ¶¶ 23–25. As part of the deal, it filed a proxy statement with the SEC. *Id.* ¶ 26. That document was supposed to give Southwestern's shareholders the scoop so they could decide whether to approve the purchase.

But the statement did not include as much detail as some shareholders wanted. Though it predicted Southwestern's financial outlook after the purchase, it did not provide every piece of data "used to calculate [those] projections." *Id.* ¶¶ 27, 31–34.

So one of Southwestern's shareholders, Nathaniel Sommer, sued. He said the company's proxy statement violated the Securities and Exchange Act by omitting "material fact[s]." *Id.* ¶ 39. Plus, by omitting these key facts, Southwestern's directors supposedly breached their fiduciary duty to disclose. *Id.* ¶¶ 55–59.

2

Days after Sommer sued, Southwestern added more information to the proxy statement. D.I. 18, at 2. The deal went through, so Sommer voluntarily dismissed the case. *Id.*; D.I. 15. Now Sommer seeks attorneys' fees for his efforts. D.I. 16.

## II. SOMMER IS NOT ENTITLED TO ATTORNEYS' FEES

First off, the parties contest whether federal or Delaware law governs their fee dispute. D.I. 22, at 6–7; D.I. 23, at 1. The answer is both: For federal questions, like those in Sommer's Exchange Act claim, federal law determines whether attorneys' fees are due. *Klein v. City of Laguna Beach*, 810 F.3d 693, 701–02 (9th Cir. 2016); *Rodriguez v. Quicken Loans, Inc.*, 257 F. Supp. 3d 840, 844–45 (S.D. Tex. 2017). For state-law issues, like Sommer's fiduciary-duty claim, Delaware rules apply. *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 775 n.47 (3d Cir. 1990).

In any case, this distinction does not matter here because federal and Delaware rules work the same way. Both let plaintiffs recover when their litigation "confer[red] a common benefit upon a class … not participating in the litigation." *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 145 (3d Cir. 1998); *see also United Vanguard Fund, Inc. v. TakeCare, Inc.*, 727 A.2d 844, 850 (Del. Ch. 1998). And when, as here, the claims were mooted, both rules require a plaintiff to show the original suit was "meritorious"—that is, whether it "could have survived a motion to dismiss." *Kahan v. Rosenstiel*, 424 F.2d 161, 167 (3d Cir. 1970); *United Vanguard*, 727 A.2d at 850.

Neither of Sommer's claims would have survived. The plausibility of Sommer's Exchange Act and breach-of-fiduciary-duty claims turn on the same question: did he allege that Southwestern's proxy omitted something "material"? *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438,

3

449 (1976); *Pfeffer v. Redstone*, 965 A.2d 676, 685 (Del. 2009). An omission is material if it would have "significantly altered the 'total mix' of information … available" to shareholders. *Northway*, 426 U.S. at 449; *Abrons v. Maree*, 911 A.2d 805, 813 (Del. Ch. 2006) ("Delaware mirrors federal law on materiality."). Though Sommer alleged some omissions, none was material.

Sommer claimed that the proxy statement did not fully explain how it calculated Southwestern's future income. Compl. ¶¶ 31–34; *see* D.I. 22-2, exh. C., at 477–79. For example, the proxy calculated Southwestern's future income using "discount rates" of 6.5–8% (rates calculating how much income earned in the future would be worth today). *Id.* at 478. It explained that it picked those rates by looking at Southwestern's projected "growth" and "long-term debt." *Id.* But it did not list every "assumption[ ] underlying" the growth rate or give the precise amount of Southwestern's debt. Compl. ¶ 33. Sommer zeroed in on that missing detail. Without it, he said, the proxy was "misleadingly incomplete." *Id.* ¶ 35.

But a proxy statement need not list every variable. *See Serion v. Nuance Commc's, Inc.*, 2022 WL 356695, at *2 (S.D.N.Y. Feb. 7, 2022); *Scott v. DST Sys., Inc.*, 2019 WL 3997097, at *5 (D. Del. Aug. 23, 2019) (noting that, to win, shareholders must "explain *how* [they] would [be] misled" without the missing variables). Nor must it enable stockholders "to make their own independent [calculations]." *In re 3Com Shareholders Litig.*, 2009 WL 5173804, at *2 (Del. Ch. Dec. 18, 2009). Instead, it need only give investors a "fair summary" of the factors underlying its calculations. *Serion*, 2022 WL 356695, at *2 (internal quotation marks omitted).

Here, the proxy did enough. It included a "fair summary" of Southwestern's growth rate, explaining the mix of elements behind those calculations. *See* D.I. 22-2, exh. C., at 478. And telling shareholders that calculations included debt, without revealing the precise amount, is also a fair overview. Besides, Sommer's complaint did not explain how more detail would have changed the game. So he alleged no material omission and failed to state a plausible claim. He thus cannot recover attorneys' fees.

Pushing back, Sommer points out that Delaware law sometimes allows recovery when a suit forces a disclosure of information that is "helpful" but not "material." D.I. 23, at 1 (quoting *In re Xoom Corp. Stockholder Litig.*, 2016 WL 4146425, at *3 (Del. Ch. Aug. 4, 2016)). That rule, he says, lets him recover fees for litigating his state-law fiduciary-duty claim. *Id.*

But this relaxed standard applies to a different requirement for getting fees under Delaware law: whether a defendant's supplemental disclosures "benefit[ed] … the corporation." *In re Xoom*, 2016 WL 4146425, at *3 & n.15 (quoting the two-part test and noting the "different analysis" at step two, which is "whether [the] disclosures added value"); *see also In re Trulia, Inc. S'holder Litig.*, 129 A.3d 884, 898 (Del. Ch. 2016). And I need not reach that step *unless* Sommer's underlying claim was plausible. *Cf. United Vanguard,* 727 A.2d at 850; *In re Xoom*, 2016 WL 4146425, at *3 n.15. As I have explained, it was not.

And even if it was, Southwestern's extra disclosures were not "helpful." Though "'[h]elpful' is a lower bar than 'material,'" a helpful disclosure must still "aid a reasonable shareholder in deciding whether to vote" on the transaction. *City Trading*

5

*Fund v. Nye*, 72 N.Y.S.3d 371, 382 (N.Y. Sup. Ct. 2018) (discussing *In re Xoom*). None of the new disclosures meet that bar.

Some of the language was not news to shareholders—and Sommer does not try to claim it was. *See* D.I. 18, at 5–7; D.I. 22, at 9. For instance, the proxy added language that the calculations were "[b]ased on [the financial advisor's] professional judgment and experience" and repeated the name of the pricing model used to calculate discount rates *See, e.g.*, D.I. 22-2, exh. D, at 685. Yet the shareholders knew these things already: the financial advisor repeated that disclaimer throughout the first proxy, the model was already disclosed *in the same sentences. See, e.g.*, D.I. 22-2, exh. C, at 477–80.

Another disclosure was irrelevant to the purchase and thus unhelpful to shareholders. The first proxy said that Southwestern could grant the financial advisor a discretionary bonus. D.I. 22-2, exh. C, at 387. The supplement clarified that Southwestern had not decided whether it would. D.I. 22-2, exh. D, at 688. That does not change much; no reasonable shareholder would rely on that statement to vote for (or against) the purchase.

Sommer focuses on a final disclosure. The proxy statement included a table valuing the deal by comparing it to other deals in the previous two years. D.I. 22-2, exh. C, at 478. The supplement added one column to that table, indicating how much the buying company had paid for the purchase. D.I. 22-2, exh. D, at 687. But that was public information. *See, e.g., EQT Announces Transformative Transaction with Alta Resources*, EQT (May 6, 2021), https://perma.cc/W2V8-E6QF; *Parsley Energy*

*Announces Acquisition of Jagged Peak Energy in All-Stock Transaction; Modest Premium Acquisition Enhances 2020F*, Bloomberg Business (Oct. 14, 2019, 8:29 A.M), https://perma.cc/2MC4-9B58. Simply stating public information does not help shareholders. *Cf. Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 343 (3d Cir. 1999).

Besides, the first version of the table already included a column telling shareholders how similar sales compared. *See* D.I. 22-2, exh. B, at 133 (listing ratios for each deal, comparing the price paid for a company to its cash flow the year after its purchase). So disclosures about the actual purchase price did not add any helpful detail.

\* \* \* \* \*

Because Sommer's complaint was not meritorious and resulting disclosures were unhelpful, I deny his motion for attorneys' fees.